FILED

AUG 26 2026

U.S. Court of Appeals
Eighth Circuit

No. 26-______

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

**26-2714**

In re UNION PACIFIC RAILROAD COMPANY
and LEONARD SHERER, Petitioners

On Petition for a Writ of Mandamus to the United States District Court for the District of Nebraska (No. 8:22-cv-239)

**JOINT PETITION FOR WRIT OF MANDAMUS**

RECEIVED

AUG 26 2026

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

Tara A. Stingley, #23243
Nathan D. Clark, #25857
Sydney M. Huss, #26581
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
Sterling Ridge
12910 Pierce St., Ste. 200
Omaha, NE 68144

*and*

Linda C. Schoonmaker
Texas #17806300
SEYFARTH SHAW L.L.P.
700 Milam St., Ste. 1400
Houston, TX 77002

*Counsel for Defendant/Petitioner Union Pacific Railroad Company*

Andrew J. Rolfes
Pennsylvania #78809
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Ste. 2800
Philadelphia, PA 19103

*Counsel for Defendant/Petitioner Leonard Sherer*

**TABLE OF CONTENTS**


I. TABLE OF AUTHORITIES ....................................................................4

II. INTRODUCTION ..................................................................................6

III. STATEMENT OF RELIEF SOUGHT ....................................................8

IV. ISSUES PRESENTED ..........................................................................8

V. STATEMENT OF FACTS ......................................................................9

A. Mr. Sherer's Deposition ...................................................................10

B. Mr. Richardson's Deposition............................................................11

C. The Magistrate Judge's Ruling..........................................................12

D. Respondent's Statement of Objections to Magistrate Judge's Ruling and District Court's August 3, 2026 Memorandum and Order ............................13

VI. REASONS WHY THE WRIT SHOULD ISSUE .........................................14

A. Authority for Issuance of the Writ......................................................14

B. Standard of Review ...........................................................................15

C. The District Court's Misapplied *Upjohn* By Treating Information Acquired Through Privileged Communications As Discoverable Merely Because it Contains Facts. .........................................................................17

1. Mr. Sherer's Deposition.............................................................21

2. Mr. Richardson's Deposition ........................................................ 26

D. The District Court Misapplied the Burden. ........................................ 30

E. The District Court Failed to Address Petitioners' Work-Product Arguments. ........................................................................................ 32

F. The District Court Failed to Afford the Magistrate Judge Appropriate Deference in Considering Respondent's Statement of Objections ............... 34

G. The Plaintiff's FRSA Argument is Without Merit. ............................. 36

H. The District Court's Relief is Unworkable and Should Be Modified. 37

VII. CONCLUSION ............................................................................... 39

# I. TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991)........................................................................................36
*Bartholomew v. Avalon Cap. Grp., Inc.*,
278 F.R.D. 441 (D. Minn. 2011)................................................................. 30, 31
*Carlson v. Freightliner LLC*,
226 F.R.D. 343 (D. Neb.)........................................................................... 16, 33
*Diversified Indus., Inc. v. Meredith*,
572 F.2d 596 (8th Cir. 1977)....................................................................... 18, 31
*Fisher v. United States*,
425 U.S. 391, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976) ........................................16
*Hickman v. Taylor,*
329 U.S. 495 (1947)........................................................................................33
*In re BankAmerica Corp. Sec. Litig.*,
270 F.3d 639 (8th Cir. 2001)....................................................................... 14, 15
*In re Bieter Co.*,
16 F.3d 929 (8th Cir. 1994)...............................................................................15
*In re FirstEnergy Corp.*,
154 F.4th 431 (6th Cir. 2025)............................................................................28
*In re General Motors Corp.*,
153 F.3d 714 (8th Cir. 1998)....................................................................... 14, 15
*In re Murphy*,
560 F.2d 326 (8th Cir. 1977)....................................................................... 16, 33
*Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*,
13 F. 4th 659 (8th Cir. 2021).............................................................................16
*Jiang v. Porter*,
No. 4:15-CV-1008 (CEJ), 2016 WL 3015163 (E.D. Mo. May 26, 2016)............30
*Mehner v. Panera*, LLC,
8:22-cv-168, 2023 WL 6810277 (D. Neb. Oct. 16, 2023) ..................................34
*Reko v. Creative Promotions, Inc.*,
70 F. Supp. 2d 1005 (D. Minn. 1999)................................................................34
*Shelton v. Am. Motors Corp.*,
805 F.2d 1323 (8th Cir. 1986)................................................................. 9, 31, 32
*Simon v. G.D. Searle & Co.*,
816 F.2d 397 (8th Cir. 1987)................................................................. 18, 31, 33

*United States v. Nobles*,
422 U.S. 225 (1975)........................................................................ 16, 33
*United States v. Spencer*,
700 F.3d 317 (8th Cir. 2012)..........................................................................15
*United States v. Williams*,
720 F.3d 674 (8th Cir. 2013)..........................................................................30
*Upjohn Co. v. United States*,
449 U.S. 383 (1981)........................................................ 6, 8, 15, 18, 20, 21, 32
*Wilkins v. Union Pacific R.R. Co.*,
8:22-cv-239, 2025 WL 3228986 (D. Neb. Nov. 19, 2025)..................................34

**Statutes**

28 U.S.C. § 1651(a) ..........................................................................................8, 14
28 U.S.C. § 636(b)(1)(A) .................................................................................. 34, 35
49 U.S.C. § 20109 ..................................................................................................7

**Rules**

Federal Rule of Civil Procedure 72(a) ..................................................... 34, 35, 36
Federal Rule of Appellate Procedure 21(a)...........................................................8, 14
Federal Rule of Appellate Procedure 32(g) ............................................................41
Federal Rule of Appellate Procedure 32(a)(5) & (6) ..............................................41

## II. INTRODUCTION

Petitioners Union Pacific Railroad Company ("Union Pacific") and Leonard Sherer ("Mr. Sherer") (collectively, "Petitioners") seek emergency relief from the District Court's August 3, 2026 Memorandum and Order (the "Order"). The Order compels former in-house counsel to testify concerning information they acquired while providing legal advice and legal representation to Union Pacific, notwithstanding testimony that answering the disputed questions would reveal privileged communications, attorney mental impressions, legal advice, and protected work product. Once disclosed, those confidences cannot be made confidential again.

This petition presents a narrow but important question: whether *Upjohn Co. v. United States*, 449 U.S. 383 (1981), permits a district court to compel attorneys to disclose information they learned through attorney–client communications simply because the information may be characterized as factual. *Upjohn* recognizes a distinction between an underlying fact and a privileged communication concerning that fact. Petitioners do not contend that independently existing facts become privileged merely because they were conveyed to counsel. They contend only that *Upjohn* does not permit a litigant to obtain those facts by compelling the attorneys who learned them through privileged communications to disclose the communications themselves.

Former Union Pacific attorney Respondent Ryan Wilkins ("Respondent"), who voluntarily resigned from Union Pacific in August 2019, alleges he was retaliated against for protected activity under the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"). Respondent deposed Mr. Sherer, Union Pacific's former Vice President, Law – Labor and Employment, and Union Pacific's former Chief Legal Officer Craig Richardson ("Mr. Richardson"). Petitioners asserted attorney–client privilege objections to questions seeking information the witnesses acquired while serving as Union Pacific counsel. After extensive briefing, argument, and evidentiary submissions, the Magistrate Judge sustained those objections. The District Court reversed not because the Magistrate Judge applied the wrong legal standard or made clearly erroneous factual findings, but because it disagreed with the Magistrate Judge's conclusion that the requested testimony would reveal privileged communications.

The threatened harm is immediate and irreparable. The Order provides no workable mechanism for determining whether a particular answer will disclose privileged information before disclosure occurs. Once Respondent obtains Union Pacific's confidential communications, legal advice, and attorney thought processes, no appeal can restore the confidentiality the privilege exists to protect. This Court has repeatedly recognized that mandamus is the proper remedy for such an invasion of privilege. Because disclosure cannot be undone once it occurs, Petitioners

respectfully request that this Court issue a writ of mandamus pursuant to 28 U.S.C. § 1651(a) and Federal Rule of Appellate Procedure 21(a), vacating the District Court's Order and reinstating the Magistrate Judge's privilege rulings.

## III. STATEMENT OF RELIEF SOUGHT

Petitioners respectfully request a writ directing the District Court to vacate the Order and to reinstate the Magistrate Judge's ruling, which sustained Petitioners' privilege objections. In the event the Court does not grant that relief, Petitioners seek a writ directing the District Court to modify its ruling.

## IV. ISSUES PRESENTED

This Petition presents the following issues:

1. Whether the District Court abused its discretion in sustaining Respondent's objection to the Magistrate Judge's ruling.

2. Whether the District Court misapplied *Upjohn Co. v. United States*, 449 U.S. 383 (1981), by compelling former in-house counsel to testify concerning information acquired through attorney–client communications on the ground that the information may be characterized as factual.

3. Whether mandamus relief is warranted where the challenged Order compels testimony concerning allegedly privileged communications, legal advice, attorney mental impressions, and litigation strategy, and where disclosure cannot be remedied after it occurs.

4. Whether the District Court correctly applied the burden of proof under *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

5. Whether the District Court exceeded the limits of Rule 72(a) review by overturning the Magistrate Judge's privilege rulings without identifying a clearly erroneous factual finding or a ruling contrary to law.

## V. STATEMENT OF FACTS

This case arises under the whistleblower protections of the FRSA. *See generally* App. A at 1; R. Doc. 45. Respondent, a former in-house attorney for Union Pacific, alleges he was retaliated against for engaging in purported protected activity pursuant to FRSA. *Id.* Near the outset of this case, the trial court recognized the importance of "protecting the core values and confidences underlying the attorney–client relationship and the parties' interests in protecting privileged and/or confidential information from public view." App. B at 20; R. Doc. 28 at 20–21.

As is relevant to the instant Writ of Mandamus, Respondent conducted the depositions of Mr. Sherer, Union Pacific's former Vice President, Law – Labor and Employment, and Mr. Richardson, Union Pacific's former Executive Vice President, Chief Legal Officer and Corporate Secretary, on January 13, 2026 and February 6, 2026, respectively. *See* App. A at 18; R. Doc. 180; App. A at 20; R. Doc. 185.

## A. Mr. Sherer's Deposition

In early 2024, While this case was being litigated, Mr. Sherer submitted unrelated complaints to the U.S. Occupational Safety and Health Administration ("OSHA") and to the U.S. Equal Employment Opportunity Commission ("EEOC") and Nebraska Equal Opportunity Commission ("NEOC"). App. B at 22; R. Doc. 203-3 at 24:9–25:13, 43:4–8. Mr. Sherer testified that the matters underlying those complaints arose from his role as legal counsel for Union Pacific and implicated attorney–client communications made during the course of that representation. App. B at 22; R. Doc. 203-3 at 26:19–27:8, 34:22–35:7, 45:1–8, 46:5–47:7. Mr. Sherer properly declined to answer questions about the substance of those complaints based on attorney–client privilege objections and his continuing obligations of confidentiality to Union Pacific as a former client.[1] App. B at 22; R. Doc. 203-3 at 26:19–30:25, 34:22–35:7, 45:1–10. During Mr. Sherer's deposition, Mr. Sherer also declined to answer questions seeking information protected by the attorney–client privilege pertaining to: (1) legal advice Mr. Sherer provided Union Pacific regarding a nonparty, former employee, Connie Roseberry ("Ms. Roseberry"), App. B at 22;

---

[1] Mr. Sherer disclosed the existence, timing, and general subject matter of the complaints as well as the adverse action he claimed to have received as a result of his alleged protected activity. App. B at 22; R. Doc. 203-3 at 25:5–8, 33:22–34:5, 34:22–25, 35:8–24, 36:8–11, 36:23–37:5, 44:7–25, 45:11–47:7, 47:21–48:18. Further, Union Pacific was ordered to, and did, produce to Respondent a copy of Mr. Sherer's demand letter to Union Pacific in connection with his complaints, with privileged content redacted. App. B at 97; R. Doc. 292 at 4:8–10.

R. Doc. 203-3 at 81:20–82:20, 93:14–94:24; (2) injury-reporting matters about which Mr. Sherer acquired information in his capacity as Union Pacific's labor and employment counsel, App. B at 22; R. Doc. 203-3 at 91:15–93:3, 93:21–94:13; and (3) his dispute with former Union Pacific attorney Rebecca Gregory ("Ms. Gregory") to the extent questioning sought legal advice, litigation strategy, attorney mental impressions, or other privileged communications concerning her representation of Union Pacific and Mr. Sherer in this litigation. App. B at 22; R. Doc. 203-3 at 96:14–97:16, 118:22–119:20, 121:25–122:20.

**B. Mr. Richardson's Deposition**

During Mr. Richardson's deposition, Union Pacific properly objected to certain questions based on the attorney–client privilege and instructed Mr. Richardson to not answer such questions. The questions at issue pertained to: (1) a discussion between Mr. Sherer and Ms. Gregory regarding Mr. Sherer's disagreement about the mental impressions, opinions, and strategy of Ms. Gregory pertaining to this very lawsuit, in which Ms. Gregory represented both Union Pacific and Mr. Sherer, App. B at 239; R. Doc. 203-4 at 117:6–118:19, 119:21–125:1, 127:16–128:2; (2) a conversation between Mr. Richardson and Ms. Gregory regarding the subject matter of the disagreement between Ms. Gregory and Mr. Sherer, App. B at 239; R. Doc. 203-4 at 129:20–132:5, 134:13–136:15; (3) the substance of the conversation Mr. Richardson had with Mr. Sherer when Mr. Sherer

was delivered a letter of reprimand pertaining to his disagreement with Ms. Gregory App. B at 239; R. Doc. 203-4 at 149:21–150:12; and (4) information concerning the basis for Mr. Sherer's discrimination charge and related demand letter, which Mr. Richardson testified he understood reflected Mr. Sherer's legal advice and opinions developed while serving as Union Pacific counsel. App. B at 239; R. Doc. 203-4 at 192:11–193:8, 193:18–196:22.

**C. The Magistrate Judge's Ruling**

On February 20, 2026, counsel for Respondent contacted the Magistrate Judge to request a discovery dispute conference and briefing schedule to address, among other items, certain attorney–client privilege objections asserted during Mr. Sherer's and Mr. Richardson's depositions. App. B at 125; R. Doc. 203-7 at 10. After multiple requests for continuances by Respondent, the parties submitted a Joint Summary Statement of Issues to the Magistrate Judge on March 5, 2026. App. B at 125; R. Doc. 203-7 at 3; *see also* App. A at 79; R. Doc. 203 at 1. On March 6, 2026, the parties appeared before the Magistrate Judge for a telephonic discovery dispute conference. App. A at 47; R. Doc. 196. During the March 6 conference—which lasted nearly two hours—the parties argued their respective positions at length. *See generally*, App. B at 136; R. Doc. 291.

Following the March 6 conference, the Magistrate Judge granted Respondent leave to submit additional materials and arguments pertaining to the attorney–client

privilege objections asserted during Mr. Sherer's and Mr. Richardson's depositions. App. A at 47; R. Doc. 196. On March 10, 2026, Respondent submitted supplemental materials and argument. App. B at 205; R. Doc. 203-2. On March 12, 2026, Petitioners submitted a Joint Supplemental Statement Regarding Discovery Dispute Issues Numbers Two and Six in response to Plaintiff's supplemental materials. App. B at 227; R. Doc. 203-6.

On March 19, 2026, the parties appeared before the Magistrate Judge for a second discovery dispute conference regarding, among other items, the attorney–client privilege objections asserted during Mr. Sherer's and Mr. Richardson's depositions. App. A at 201; R. Doc. 201. The Magistrate Judge's Order, stated on the record during the March 19 conference, and summarized in the court's March 20, 2026 written Order (collectively, the "Magistrate Judge's Order"), sustained the attorney–client privilege objections asserted during Mr. Sherer's and Mr. Richardson's depositions and denied Respondent's request to compel further deposition testimony. App. B at 97; R. Doc. 292 at 7:5–8; *see also* App. A at 79; R. Doc. 203.

### D. Respondent's Statement of Objections to Magistrate Judge's Ruling and District Court's August 3, 2026 Memorandum and Order

On April 6, 2026, Respondent filed a Statement of Objections to Magistrate Judge's Order ("Statement of Objections"). App. A at 51; R. Doc. 209. On August 3,

2026, the District Court issued its Order sustaining Respondent's Statement of Objections. App. A at 38; R. Doc. 287. The Order sustained Respondent's objections to the Magistrate Judge's privilege ruling and authorized the renewed depositions of Mr. Sherer and Mr. Richardson, at Petitioners' expense, concerning the topics identified in the Order. App. A at 38; R. Doc. 287 at 6–9.

## VI. REASONS WHY THE WRIT SHOULD ISSUE

### A. Authority for Issuance of the Writ

This Court possesses authority to issue the requested writ pursuant to the All Writs Act, 28 U.S.C. § 1651(a); *see also* Fed. R. App. P. 21(a). Petitioners seek review of an interlocutory discovery order compelling testimony that would disclose information acquired through attorney–client communications and legal representation. Because the confidentiality protected by the attorney–client privilege cannot be restored once disclosure occurs, appellate review following final judgment is not an adequate remedy.

This Court has recognized that privilege disputes arising out of discovery are an appropriate subject of interlocutory mandamus relief. *E.g.*, *In re General Motors Corp.*, 153 F.3d 714 (8th Cir. 1998). "Though mandamus is an extraordinary remedy, we will issue the writ when the district court has committed a clear error of law or abuse of discretion in ordering the disclosure of privileged materials." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001). Such

extraordinary relief is warranted because "the district court's order would otherwise destroy the confidentiality of the communications at issue." *In re General Motors*, 153 F.3d at 715.

## B. Standard of Review

Mandamus is an extraordinary remedy, but it is appropriate when a district court commits "a clear error of law or abuse of discretion in ordering the disclosure of privileged materials 'because maintenance of the attorney–client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy.'" *In re BankAmerica*, 270 F.3d at 641 (quoting *In re Bieter Co.*, 16 F.3d 929, 931–33 (8th Cir. 1994)).

The attorney–client privilege "protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012). In the corporate context, the privilege extends to communications between corporate counsel and company personnel when those communications are made to facilitate the rendering of legal advice. *Upjohn Co. v. United States*, 449 U.S. 383 (1981). The privilege exists to encourage "full and frank communication between attorneys and their clients." *Id.* at 389. *Upjohn* recognizes a distinction between an underlying fact and a communication concerning that fact. *Id.* at 395–96.

*Upjohn* does not suggest, however, that an attorney may be compelled to disclose information acquired through confidential attorney–client communications merely because the communication contains factual information. So long as the communication "relate[s] to attorney–client business," *Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*, 13 F. 4th 659, 676 (8th Cir. 2021), it is protected as a "disclosure[] necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L. Ed. 2d 39 (1976).

"[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Carlson v. Freightliner LLC*, 226 F.R.D. 343, 366 (D. Neb. 2004) (*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975)). It "reflects the practical reality that proper preparation of a client's case demands that a lawyer assemble information, sift through it to separate the relevant from the irrelevant facts, prepare legal theories and plan strategy without undue and needless interference." *Id.* The doctrine protects "both ordinary work product and opinion work product" and "guard[s] against divulging the attorney's strategies and legal impressions." *Id.* It extends not only to ongoing litigation but to preparation "for previous, unrelated litigation." *In re Murphy*, 560 F.2d 326, 335 (8th Cir. 1977).

### C. The District Court's Misapplied *Upjohn* By Treating Information Acquired Through Privileged Communications As Discoverable Merely Because it Contains Facts.

The District Court relied on *Upjohn*'s statement that the attorney–client privilege does not protect "underlying facts" and concluded that Plaintiff was entitled to testimony concerning the factual basis of Mr. Sherer's complaints, alleged protected activity, discrimination claims, injury-reporting concerns, and dispute with Ms. Gregory. App. A at 38; R. Doc. 287 at 4–8. The District Court's analysis overlooked the question actually presented here. Petitioners do not contend that underlying facts become privileged merely because they are communicated to an attorney. Nor do Petitioners contend that a *client* may refuse to disclose an independently existing fact simply because that fact was previously discussed with counsel.

That principle, however, does not answer the question before the Court. The issue here is whether Respondent may compel former in-house counsel to testify concerning information they acquired during privileged communications for the purpose of providing legal advice to Union Pacific. *Upjohn* does not hold that an *attorney* may be compelled to disclose the communications through which the attorney learned those facts. To the contrary, *Upjohn* repeatedly emphasizes that the attorney–client privilege exists to encourage full and frank communications between

client and counsel and protects communications made for the purpose of obtaining legal advice. 449 U.S. at 389–96.

The distinction is critical. If a client witnesses a traffic accident, the client may be required to testify that the traffic light was green. *Upjohn* does not permit the client to withhold that fact merely because it was later communicated to counsel. But the attorney who learned that fact solely through a confidential communication from the client cannot be compelled to testify that the light was green. To do so would require disclosure of the very communication the privilege protects. The Eighth Circuit has recognized that the privilege protects against disclosures that would reveal client confidences either "directly or inferentially." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987); *see also Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977) (holding materials privileged because disclosure "would reveal directly or inferentially the contents of the interviews").

The same principle applies here. The relevant inquiry is not merely whether the requested testimony can be characterized as factual. It is whether answering the questions would directly or inferentially reveal confidential communications made for the purpose of obtaining or providing legal advice. *Simon*, 816 F.2d at 403; *Diversified*, 572 F.2d at 611.

The record establishes that it would. With respect to the Ms. Gregory incident, Mr. Sherer testified that the subject of the disagreement concerned legal advice being

provided to Union Pacific in this litigation. Mr. Sherer therefore could not disclose the basis for the dispute without revealing privileged communications concerning legal advice provided to Union Pacific. With respect to Mr. Richardson, the privilege issue is different. Petitioners do not contend that every communication between two company lawyers is privileged or that Mr. Richardson was necessarily providing Ms. Gregory legal advice when she reported the incident. Rather, Ms. Gregory's communication concerned a dispute concerning the legal advice she was providing to Union Pacific and Mr. Sherer in this very litigation. Mr. Richardson testified that they were "discussing her legal advice to the company" and that transmission of that advice remained privileged. App. B at 239; R. Doc. 203-4 at 131:21–132:4. Requiring Mr. Richardson to disclose the subject of the disagreement would therefore reveal, directly or inferentially, the substance of Ms. Gregory's privileged legal advice.

Apart from the communications with Ms. Gregory, Respondent also sought information from Mr. Sherer that was privileged for a different reason. The information sought concerned safety-reporting and injury-reporting matters that he learned in the course of representing Union Pacific as its labor and employment counsel. The privilege issue therefore arises because answering those questions would require Mr. Sherer to disclose information he acquired through attorney–client communications and legal work performed on Union Pacific's behalf.

The same concern applies to questioning regarding Mr. Sherer's discrimination charge and related demand letter. Petitioners do not contend that the mere existence of the charge or letter is privileged. Indeed, Union Pacific produced a version of the demand letter after the Magistrate Judge conducted an *in camera* review and approved redactions of privileged material. The privilege issue arises because Respondent sought testimony concerning the factual basis of Mr. Sherer's claims. Mr. Sherer testified that those claims arose from information he acquired and legal work he performed while serving as Union Pacific's labor and employment counsel. Mr. Richardson's testimony corroborates that the demand letter concerned legal compliance issues arising from matters on which Mr. Sherer had served as counsel. Requiring either witness to explain those matters would therefore disclose, directly or inferentially, privileged communications and attorney thought processes rather than merely independent facts.

The District Court did not analyze the source of the information sought. Once it characterized the requested information as factual, it treated the privilege inquiry as effectively complete. App. A at 38; R. Doc. 287 at 4–8. But *Upjohn* distinguishes between an independently existing fact and the confidential communication concerning that fact. 449 U.S. at 395–96. It does not authorize discovery from counsel merely because information obtained through a privileged communication has factual content.

The District Court's reading also conflicts with the purpose of the privilege. *Upjohn* explains that the privilege encourages "full and frank communication between attorneys and their clients" and enables corporate counsel to obtain the information necessary to provide informed legal advice. *Id.* at 389, 392. If corporate attorneys may later be compelled to disclose information supplied during confidential legal consultations whenever that information can be labeled factual, employees and corporate clients have less reason to communicate candidly with counsel. The more complete the client's factual disclosure, the greater the resulting exposure. That is the opposite of the incentive *Upjohn* sought to preserve.

The Order thus does more than permit discovery of facts from witnesses who possess independent knowledge. It requires former company attorneys to testify about matters they learned through corporate legal representation, without first determining whether their answers would reveal privileged communications directly or inferentially. That is the legal error warranting mandamus relief.

Here, these considerations uniformly militate *against* the District Court's Order.

**1. Mr. Sherer's Deposition**

**First**, the Magistrate Judge properly sustained Union Pacific's objections to questions seeking the substance of Mr. Sherer's FRSA complaint against Union Pacific on the grounds that such testimony would necessarily require the disclosure

of "attorney–client privileged communications involving Union Pacific." App. B at 22; R. Doc. 203-3 at 26:19–27:12. As the District Court already held in this case, the attorney–client privilege applies to communications between an attorney (i.e., Mr. Sherer) and his client (i.e., Union Pacific) even if such communications form the basis of a later claim by the attorney against the client. App. B at 1; R. Doc. 28, p. 17. To require Petitioners to tease out the "facts" of Mr. Sherer's complaint concerning legal representation from the representation itself (in addition to being infeasible) undermines the privilege's purpose.

The substance of Mr. Sherer's complaint arose from his role as labor and employment counsel for Union Pacific and from communications made in the course of providing legal advice to Union Pacific. The information Respondent seeks is therefore not analogous to an independently existing fact, such as whether a traffic light was green. Rather, the complaint itself is rooted in Mr. Sherer's legal representation of Union Pacific and the communications that representation required. Requiring Mr. Sherer to identify the purported "facts" underlying the complaint would necessarily require him to disclose, directly or inferentially, the privileged communications and legal work giving rise to it.

**Second**, the Magistrate Judge correctly held that Mr. Sherer properly declined to answer questions regarding his perceived protected FRSA activity, consistent with his ethical obligations as Union Pacific's former attorney, because answering such

questions "would breach [Mr. Sherer's] ethical obligation of confidentiality" to Union Pacific. App. B at 22; R. Doc. 203-3 at 35:1–7; *see also* Model Rules of Prof. Cond. 1.6(a) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)."); *id.*, 1.9(c) (addressing an attorney's continuing duty of confidentiality to former clients).

**Third**, the Magistrate Judge correctly held that Mr. Sherer properly declined to answer questions regarding the factual basis for his Charge of Discrimination against Union Pacific filed with the NEOC and EEOC, based on the attorney–client privilege, given that such "issues arose during and as a result of [Mr. Sherer's] relationship as an attorney with Union Pacific." App. B at 22; R. Doc. 203-3 at 45:1–10, 45:18–47:7. Consistent with Mr. Sherer's ethical obligations to Union Pacific, he sufficiently testified that his Charge of Discrimination generally raised concerns about race discrimination, a matter *wholly irrelevant* to Respondent's FRSA retaliation claims asserted in this case. App. B at 22; R. Doc. 203-3 at 45:11–17.

**Fourth**, the Magistrate Judge correctly held that Mr. Sherer was not required to testify regarding "legal advice" he provided to Union Pacific regarding a non-party, former employee, Ms. Roseberry. App. B at 22; R. Doc. 203-3 at 81:20–82:18, 93:24–94:9. As clarified by Mr. Sherer, "[a]ny involvement concerning [Ms.

Roseberry] in her role as the AVP for safety would have been in [Mr. Sherer's] role as the labor and employment attorney for Union Pacific. Any of those conversations would have been subject to the attorney–client privilege." App. B at 22; R. Doc. 203-3 at 82:11–18.

**Fifth**, the Magistrate Judge properly sustained Mr. Sherer's limitation of his testimony to nonprivileged information regarding discussions with his client, Union Pacific, related to Mr. Sherer purportedly not properly reporting injuries. App. B at 22; R. Doc. 203-3 at 91:15–92:12. Consistent with his ethical obligations as Union Pacific's former attorney, Mr. Sherer provided non-privileged testimony in response to Respondent's questioning by stating that "[t]here have been no allegations against [Mr. Sherer] for failure to report injuries during [his] time at Union Pacific." App. B at 22; R. Doc. 203-3 at 93:9–20.

**Sixth**, contrary to the arguments raised by Respondent's Statement of Objections, Mr. Sherer did not refuse to answer questions regarding whether Mr. Sherer was aware of certain employees being terminated. Rather, in response to questioning of Mr. Sherer regarding termination of operating department employees, the Magistrate Judge correctly held that Mr. Sherer properly limited his testimony to non-privileged information by stating he is "aware that individuals were terminated in the operating department for failing to properly report or identify safety concerns or report safety injuries." App. B at 22; R. Doc. 203-3 at 92:13–93:3.

**Seventh**, the Magistrate Judge properly sustained Union Pacific's objections to questioning seeking information regarding the "incident" between Mr. Sherer and Ms. Gregory in March 2023. App. B at 22; R. Doc. 203-3 at 97:6–12. At the time, Ms. Gregory served as counsel for both Union Pacific and Mr. Sherer with respect to this very lawsuit. Accordingly, the Magistrate Judge properly sustained Union Pacific's objections to the extent the question sought "to invade the attorney–client privilege and to the extent it ask[ed] for details about privileged information relating to the incident." App. B at 22; R. Doc. 203-3 at 97:6–12. Notably, Union Pacific did not instruct Mr. Sherer not to respond based on its stated objections and Mr. Sherer proceeded to testify at length regarding non-privileged facts related to the interaction. App. B at 22; R. Doc. 203-3 at 97:8–108:8, 119:21–122:20.

**Eighth**, contrary to the argument raised in Respondent's Statement of Objections, Mr. Sherer testified extensively regarding the meeting he had with Mr. Richardson and Pam Lammers during which Mr. Sherer was provided with a letter of reprimand based on his interaction with Ms. Gregory. App. B at 22; R. Doc. 203-3 at 117:24–118:21. The Magistrate Judge properly sustained Union Pacific's objections to further questioning by Plaintiff's counsel regarding Mr. Sherer's specific concerns about the litigation handled by Ms. Gregory—in which Ms. Gregory served as counsel for both Union Pacific and Mr. Sherer at the time—because the concerns raised by Mr. Sherer related, in part, to "legal issues as it related

to the handling of the matter," including "strategy-related" concerns. App. B at 22; R. Doc. 203-3 at 118:22–119:20.

**Finally**, contrary to the argument raised in Respondent's Statement of Objections, Union Pacific did not object to questioning regarding why Mr. Sherer believed Ms. Gregory's handling of the litigation at issue was "damaging to [Mr. Sherer's] reputation" or "cast [him] in a negative light." App. B at 22; R. Doc. 203-3 at 121:11–122:20. The Magistrate Judge properly held Mr. Sherer testified sufficiently on this issue by presenting testimony on non-privileged information in response to Respondent's questions.

**2. Mr. Richardson's Deposition**

**First**, the Magistrate Judge properly sustained Union Pacific's objection to questioning posed to Mr. Richardson related to the discussion between Mr. Sherer and Ms. Gregory regarding Mr. Sherer's "disagreement about the mental impressions and opinions and strategy of counsel [Ms. Gregory]," *relating to the defense of this very case*, as such information is necessarily protected by the attorney–client privilege and work product doctrine. App. B at 239; R. Doc. 203-4 at 127:16–128:2.

**Second**, the Magistrate Judge properly sustained Union Pacific's objection to questions related to conversations between Mr. Richardson and Ms. Gregory regarding the subject matter of the disagreement between Ms. Gregory and Mr.

Sherer, based on the attorney–client privilege and work product. App. B at 239; R. Doc. 203-4 at 129:20–136:2. Notably, Mr. Richardson still testified extensively by providing non-privileged factual information concerning the privileged discussions between Mr. Sherer and Ms. Gregory, as well as Ms. Gregory's subsequent complaint. App. B at 239; R. Doc. 203-4 at 129:20–136:2. Moreover, as clarified by Mr. Richardson, the actions taken by Union Pacific in 2023 in response to Ms. Gregory's complaint "*had nothing to do with the specific facts* of the disagreement. It had everything to do with . . . the 'How' Mr. Sherer communicated with a colleague. They could have been talking about the weather." App. B at 239; R. Doc. 203-4 at 128:21–129:2 (emphasis added).

**Third**, the Magistrate Judge properly sustained Union Pacific's objection to Respondent's question inquiring as to "the substance of the conversation" Mr. Richardson had with Mr. Sherer when he delivered a letter of reprimand. App. B at 239; R. Doc. 203-4 at 149:21–150:5. Union Pacific did not instruct Mr. Richardson not to answer based on its stated objections, and Mr. Richardson provided comprehensive non-privileged testimony regarding the meeting. App. B at 239; R. Doc. 203-4 at 149:21–153:24.

**Finally**, the Magistrate Judge properly sustained Union Pacific's objections to questions regarding the factual basis for Mr. Sherer's Charge of Discrimination, based on the attorney–client privilege and work product, which, as testified to by

Mr. Richardson, "rested on [Mr. Sherer's] legal opinions and advice." App. B at 239; R. Doc. 203-4 at 196:3–8. Thus, Respondent was not merely seeking independently existing facts; he was seeking testimony concerning the legal advice and analyses that formed the basis of those claims. Moreover, as noted above, Mr. Sherer's Charge generally raised concerns about race discrimination, a matter wholly irrelevant to Plaintiff's FRSA claims. App. B at 22; R. Doc. 203-3 at 45:11–17.

*       *       *

In short, the District Court did not adequately consider the key contextual points identified above. As the Sixth Circuit has recognized in recently affording mandamus relief to vacate a district court's discovery order, "[w]hat matters under the attorney–client privilege is whether a company seeks legal advice." *In re FirstEnergy Corp.*, 154 F.4th 431, 438 (6th Cir. 2025) (citing cases). It noted too that a client's business-related interest in seeking legal advice does not "transform[] the communications and legal work into something other than legal advice." *Id.*

It also bears mention that Respondent has not clearly explained the relevance of any of the above identified issues to his case. The compelled testimony concerns Mr. Sherer's separate FRSA complaint, discrimination charge, injury-reporting issues, and dispute with Ms. Gregory years after Respondent separated from Union Pacific. Those matters involve a different individual, different allegations, and events that occurred in March 2023, nearly four years after Respondent's

employment ended. In his Statement of Objections, Respondent made only passing reference to impeachment without explaining how the requested testimony bears on any disputed issue in this case. Whatever incremental relevance these subjects may possess does not justify compelling former in-house counsel to disclose information acquired through legal representation.

These are not facts analogous to asking a client whether a traffic light was red or green based on their independent knowledge. The disputed testimony concerns information acquired in the course of providing legal advice and legal representation to Union Pacific. Treating the factual nature of the information as dispositive ignores the context in which the information was acquired and the communications the privilege is intended to protect.

The District Court's approach also creates a practical problem. The Order compels testimony on subjects that the Magistrate Judge determined implicated attorney–client privilege and work product, but provides no mechanism for separating allegedly discoverable "facts" from the privileged communications through which those facts were learned. It effectively requires former company attorneys to parse, in real time, the factual content of legal consultations from the communications and legal advice embedded within them.

For Mr. Sherer and Mr. Richardson, that is not a meaningful distinction. The information at issue was acquired in the course of legal representation and through

communications concerning legal advice. The witnesses cannot disclose the purported "facts" without simultaneously disclosing, directly or inferentially, the privileged communications from which those facts derive.

Once such testimony is compelled, the confidentiality protected by the attorney–client privilege is lost and cannot be restored through a later appeal.

### D. The District Court Misapplied the Burden.

Compounding its error is the District Court's conclusion that "[t]here has not been a showing that the attorney–client privilege applies." App. A at 38; R. Doc. 287 at 6. Petitioners do not contest that the party asserting attorney–client privilege bears the "initial burden" of establishing that the privilege applies. *See* *United States v. Williams*, 720 F.3d 674, 686 (8th Cir. 2013); *Jiang v. Porter*, No. 4:15-CV-1008 (CEJ), 2016 WL 3015163, at *1 (E.D. Mo. May 26, 2016). But once that party "establishes facts necessary to support a prima facie claim of privilege," the burden shifts to the opponent "to establish that the privilege does not . . . apply." *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 448 (D. Minn. 2011).

Here, Petitioners have made a *prima facie* showing that the disputed testimony would reveal communications made for the purpose of obtaining or providing legal advice. As discussed above, Mr. Sherer testified that the subject of his claims against Union Pacific involved attorney–client communications with Union Pacific, that the safety- and injury-reporting matters at issue came to him through his role as Union

Pacific's labor and employment counsel, and that his dispute with Ms. Gregory concerned legal issues and litigation strategy. *See supra* Sections VI.B.1 and VI.B.2. Mr. Richardson likewise testified that the communications at issue involved Ms. Gregory's legal advice to Union Pacific and that the factual basis of Mr. Sherer's later claims rested on Mr. Sherer's legal opinions and advice developed while serving as Union Pacific counsel. *Id.* That showing was sufficient to establish that answering the disputed questions would reveal privileged communications directly or inferentially. *See Simon,* 816 F.2d at 403; *Diversified Industries*, 572 F.2d at 611.

Having established that the disputed testimony concerned communications made for the purpose of obtaining or providing legal advice, Petitioners could hardly demonstrate in greater detail why the requested "facts" were inseparable from the underlying communications without disclosing the very privileged information they sought to protect.

Under circumstances such as these, where an opposing party seeks to conduct a highly sensitive deposition of counsel, this Court has said it is the *examining party's* burden to show: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

The concerns identified by the Eighth Circuit in *Shelton* are equally relevant here. Respondent seeks testimony from former senior in-house counsel concerning communications that Petitioners contend involve legal advice, attorney mental impressions, and privileged consultations. Respondent has made no showing of efforts to obtain the information from other non-attorney witnesses; that the requested testimony could be separated from the legal advice and communications giving rise to it; or that the facts are highly relevant or crucial to the preparation of his case, so as to justify piercing privilege concerns associated with the deposition of former in-house counsel. The District Court did not analyze or require of Respondent any such showing.

**E. The District Court Failed to Address Petitioners' Work-Product Arguments.**

In opposing Respondent's Statement of Objections to the District Court, Petitioners argued not only that the subjects at the deposition were privileged, but also that they were protected by the work-product doctrine. App. A at 22; R. Doc. 222 at 6–8. The District Court did not address this issue. That failure alone was error. *See, e.g.*, *Upjohn*, 449 U.S. at 398–302 (separately evaluating work-product protection from attorney–client privilege).

Had it considered this issue, it again should have upheld the Magistrate Judge's determination. The work-product doctrine is "broader than the attorney–

client privilege" *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)). It "was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney,'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir. 1987) (*quoting* *Hickman v. Taylor,* 329 U.S. 495, 510 (1947)), including "when a party seeking discovery attempts to ascertain 'historical' facts which inherently reveal the attorney's mental impressions . . . ,"*Carlson v. Freightliner LLC*, 226 F.R.D. 343, 366 (D. Neb.). It extends not only to ongoing litigation but to preparation "for previous, unrelated litigation." *In re Murphy*, 560 F.2d at 335.

Much of the testimony given at Mr. Sherer's and Mr. Richardson's depositions shows that the communications at issue related to the litigation strategy and mental impressions of anticipated or ongoing litigation. Mr. Sherer testified his interaction with Ms. Gregory was "over a handling of litigation in which she was managing." App. B at 22; R. Doc. 203-3 at 96:14–100:16. And Mr. Richardson testified similarly, explaining Mr. Sherer "had a disagreement [with Ms. Gregory] about the mental impressions and opinion and strategy of counsel." App. B at 239; R. Doc. 203-4 at 127:16–128:2; *see also* App. B at 22; R. Doc. 203-3 at 116:25–117:5 (identifying dispute as related to the instant litigation). Mr. Sherer's discrimination allegations, too, reflected "the legal advice, mental impressions, opinions, and strategies of Mr. Sherer while he was a lawyer of Union Pacific." App. B at 239; R. Doc. 203-4 at

195:3–196:22. Just as Respondent made no effort to comply with *Shelton*'s requirements for deposing an opposing party's attorney, Respondent has at no time shown any pressing need or substantial hardship that would justify invading the work-product protection here. The work-product doctrine, therefore, is an additional and independent ground for vacating the District Court's Order.

### F. The District Court Failed to Afford the Magistrate Judge Appropriate Deference in Considering Respondent's Statement of Objections.

Discovery disputes are, by design, submitted to the sound discretion of federal magistrate judges. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Accordingly, "[t]he standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is *extremely* deferential." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999) (emphasis added). The District Court's Order correctly acknowledges that "[m]agistrate judges retain 'broad discretion in managing pretrial discovery' and in limiting discovery to what, in the magistrate judge's opinion, are the 'central issues.'" *Wilkins v. Union Pacific R.R. Co.*, 8:22-cv-239, 2025 WL 3228986, at *6 (D. Neb. Nov. 19, 2025) (quoting *Mehner v. Panera, LLC*, 8:22-cv-168, 2023 WL 6810277 (D. Neb. Oct. 16, 2023)).

Here, the Magistrate Judge properly exercised his discretion after extended arguments and *in camera* review of evidence. He discussed his reasoning on the record, followed by a written order. During the second conference, the Magistrate

Judge specifically identified the following considerations that supported his decision: (1) the nature of Mr. Sherer's complaints; (2) the proportionality of the discovery sought to the case; (3) the timing and progression of discovery; (4) and the ability to obtain discovery from other sources, including the ordered production of Mr. Sherer's demand letter to Union Pacific. App. B at 97; R. Doc. 292 at 6:22–7:8.

The District Court's Order does not meaningfully address several of the grounds on which the Magistrate Judge sustained Petitioners' objections, including proportionality, alternative sources of discovery, and the Magistrate Judge's *in camera* review. Mere disagreement with the Magistrate Judge's considered assessment of those factors is not sufficient to render the ruling clearly erroneous or contrary to law. And, to the extent the District Court believed the governing legal principles compelled a different result, its review remained limited to whether the Magistrate Judge's ruling was "contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

The Magistrate Judge's Order was not contrary to law. The question was not whether the information had factual content; virtually all attorney–client communications do. The question was whether the testimony sought would reveal information acquired through privileged communications and legal consultations. The Magistrate Judge concluded that it would. After extensive involvement in the

discovery process and an *in camera* review of the relevant materials, the Magistrate Judge determined that Respondent's questioning invaded privileged subject matter. The District Court did not identify a clearly erroneous factual finding or a legal rule requiring disclosure. Instead, it substituted its own view that the information should be treated as "facts." That approach is inconsistent with *Upjohn* and inconsistent with the deference required by Rule 72(a).

**G. The Plaintiff's FRSA Argument is Without Merit.**

Respondent argued below that the remedial purpose of the FRSA supports disclosure notwithstanding the attorney–client privilege. The Magistrate Judge considered Respondent's argument and was "not persuaded in a way to make a finding" in Respondent's favor. App. B at 97; R. Doc. 292 at 23:17–18. The District Court referenced the argument but declined to address the issue. App. A at 38; R. Doc. 287 at 6 n.4.

Respondent's argument below identifies no textual basis, or supporting authority, for this argument, other than the FRSA's general remedial purpose. Absent a clear indication to the contrary, courts presume that Congress legislates against the backdrop of established common-law privileges. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). The FRSA contains no language suggesting that Congress intended to abrogate attorney–client privilege or otherwise alter the ordinary rules governing privileged communications.

The FRSA's remedial purpose, without more, is not enough for the Court to decline to apply the federal common law on privilege here. Because neither the Magistrate Judge nor the District Court relied on the FRSA to resolve the privilege issues presented, the Court need not address the argument further. Should Respondent choose to resuscitate this argument here, the Court should reject it.

**H. The District Court's Relief is Unworkable and Should Be Modified.**

Finally, Petitioners only advance this argument in the event the Court declines to vacate the District Court's Order in its entirety. The District Court's remedy is not workable, and should be modified, because it provides no meaningful mechanism for protecting privileged communications from disclosure before testimony is compelled.

Rather than identifying specific questions, the District Court authorized broad, category-based re-depositions with "appropriate follow-up questions" across multiple sprawling topics. App. A at 38; R. Doc. 287 at 6. The District Court itself acknowledged that "[Respondent] only identified a few specific questions to which he seeks an answer" and suggested (incorrectly, in Petitioners' view) that this was due to Respondent's counsel being "rejected at almost every turn." *Id*. But the remedy for that uncertainty is not to open the floodgates to broad-category depositions at Petitioners' expense. The District Court's Order effectively invites Respondent to conduct free-ranging re-depositions of two former senior legal

officers of Union Pacific, policed only by the vague instruction that Respondent is "not entitled to details about legal strategies" or "the substance of conversations conveying legal opinions, advice, or options." *See generally*, App. A at 38; R. Doc. 287 at 6–9.

This creates an impossible line-drawing exercise in real time during depositions. The Order compels testimony on subjects that the Magistrate Judge determined implicated attorney–client privilege and work product, yet provides no procedure for determining whether a particular answer will reveal privileged information before disclosure occurs. It effectively requires former company attorneys to attempt to separate the factual content learned through legal representation from the privileged communications in which that information was acquired. The requested separation of "facts" from privileged communications cannot be accomplished. Answering the questions would necessarily reveal, directly or inferentially, the substance of attorney–client communications through which the witnesses acquired the information. Once that testimony is compelled, the confidentiality protected by the privilege cannot be restored through a later appeal.

The Magistrate Judge—who, to date, has been the judicial officer closest to the facts and best positioned to manage discovery—conducted a careful review of the parties' positions and legal arguments, and ultimately determined the privilege objections should be sustained. The District Court's Order to override that judgment

and force broad re-depositions is precisely the kind of overbroad discovery compulsion that mandamus exists to prevent.

Therefore, if this Court concludes that some additional testimony may be compelled, it should at minimum remand for further proceedings because the current Order provides no workable mechanism for protecting privileged communications before disclosure occurs.

## VII. CONCLUSION

For the foregoing reasons, Petitioners respectfully request their petition be granted and the District Court's Order vacated.

Dated this 26th day of August, 2026.

*Jointly submitted by*,

UNION PACIFIC RAILROAD COMPANY, Petitioner

By: s/ Tara A. Stingley

Tara A. Stingley (#23243)
Nathan D. Clark (#25857)
Sydney M. Huss (#26581)
CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, L.L.P.
Sterling Ridge
12910 Pierce Street, Suite 200
Omaha, NE 68144
(402) 397-1700
tstingley@clinewilliams.com
nclark@clinewilliams.com
shuss@clinewilliams.com
*Counsel for Union Pacific Railroad Company*

*– and –*

Linda C. Schoonmaker (Texas #17806300)
SEYFARTH SHAW L.L.P.
700 Milam Street, Suite 1400
Houston, TX 77002-2797
(713) 225-2300
lschoonmaker@seyfarth.com
*Counsel for Union Pacific Railroad Company*

*– and –*

LEONARD SHERER, Petitioner

By: s/ Andrew J. Rolfes
Andrew J. Rolfes (Pennsylvania #78809)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2177
arolfes@cozen.com
*Counsel for Leonard Sherer*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document complies with the word limit of Rule 21(d)(1) because, excluding the parts of the document exempted by Rule 32(g), the petition contains 7,502 words, in reliance upon Microsoft Word. The document additionally complies with the applicable typeface and type style requirements under FRAP 32(a)(5) & (6), because it was prepared in size 14 Times New Roman, a proportionally spaced font.

s/ Tara A. Stingley

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2026, I e-mailed a copy of the foregoing to all trial counsel of record and to the District Court Judge.

s/ Tara A. Stingley